HARRIS, C. Senior Judge,
dissenting.
Alexander leased commercial space in an office building from A.B. Anks, Inc. Short *306 ly after talcing possession in July 2000, Alexander became aware that rodents audibly roamed the crawl space above her unit. Alexander notified Anks by letter dated September 1, 2000, complaining of the rodents, as well as other problems, and requested that the matter be addressed. After months of no relief during which rodents died in the crawl space or duct work, and flies were attracted to their dripping bodily fluids, Alexander’s attorney wrote to Anks on January 4 and reaffirmed his client’s previous letter and demanded that action be taken “within seven days from the receipt of this letter” or the lease would be terminated as of January 31, 2001.[1] Finally, on January 18th, when no action had been taken, Alexander’s attorney again wrote Anks and advised them that a “rodent or some other animal has apparently expired in the roof immediately over my client’s offices, and blood from the remains of whatever animal may have died began dripping from the interior ceiling onto my client’s furnishings.” The Attorney then advised Anks that the lease was terminated as of January 31, 2001.[2] Alexander moved out of the premises.
Anks sued Alexander for abandoning the lease. Alexander defended on the basis that Anks’ breach of the lease by failing to resolve the rodent problem justified her termination. She counterclaimed for moving expenses and for damages resulting from the higher rental which she now was required to pay. For the purpose of its summary judgment hearing and this appeal, Anks admits that it breached the lease by failing to resolve the rodent problem but moved for summary judgment on the sole basis that Alexander failed to meet the 20 day notice requirement of section 83.201, Fla. Stat. (2000), before terminating the lease. The trial court granted summary judgment against Alexander for approximately $30,000 on that basis. I would reverse.
Section 83.201 permits the tenant, if the landlord is in default of the lease by failing to perform repairs or maintenance as required by the lease, to give the landlord 20 days written notice to cure the default and to withhold rental payments for the next pay period and yet remain in possession. If the landlord fails to make the repairs within that period, then the tenant is permitted to vacate the premises and keep the withheld rental, and terminate the lease.[3] But this is only one of the tenant’s remedies for a landlord’s breach of the lease. Section 83.201 provides specifically that it is cumulative and that the tenant has available all other remedies.
In this case, Alexander chose to exercise another remedy. Instead of asserting her section 83.201 right to coerce the landlord’s compliance with its obligations by remaining in possession while withholding rental, she elected instead to rely on the traditional remedy for breach of lease, termination. Section 83.201 is merely an additional remedy by which the tenant can exert pressure on the landlord to meet its contractual obligation to make necessary *307 repairs by staying in possession and not paying rental until the repairs are made; it was not intended to shield a defaulting landlord from the risk of termination of its lease because of its continuing, wilful default. The majority position will permit a landlord to constantly default on its repair obligations and yet prevent termination by merely making the repairs after notice is given and at the last moment. This can’t be the law.

. The lease provides a remedy only if the tenant breaches and says nothing about the landlord breaching. However, the only notice requirement contained in this default provision is 10 days. Here, the landlord was given over 20 days notice of this conditional termination and yet took no action.

. Again, the landlord was given nearly two weeks notice of the termination.

.Even though termination is permitted if the tenant chooses this remedy, there is no indication that the legislature intended to prohibit termination unconnected with coercing repairs by withholding rent. It may be, as it was in this case, that the tenant will choose to simply discontinue a relationship with a defaulting landlord who shows a wilful and continuing disregard for its commitments.